UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 25-cv-80233 |
| ) | |
| JUPITER COMMUNITY RADIO, ) | |
| INC. ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Comes now the United States of America, Plaintiff, by and through the undersigned Assistant United States Attorney for this District, and states as follows:

1. This action is brought by the United States of America, against Defendant Jupiter Community Radio, Inc. ("Jupiter"), former licensee of low-power FM station WJUP-LP in Jupiter, Florida ("Station"), pursuant to 47 U.S.C. § 504(a) to enforce a Forfeiture Order released by the Federal Communications Commission ("FCC" or "Commission") on August 11, 2022, and affirmed on reconsideration on June 18, 2024, pursuant to 47 U.S.C. § 503(b).

## JURISDICTION AND VENUE

2. This action is brought by the United States of America, with jurisdiction provided by 28 U.S.C. §§ 1331, 1345 and 1355 and 47 U.S.C. § 504(a).

3. Venue is proper pursuant to 28 U.S.C. §§ 1355(b), 1391(b), 1395(a) and 47 U.S.C. § 504(a), because the acts or omissions giving rise to this forfeiture action occurred in Jupiter, Florida.

## PARTIES

4. Plaintiff is the United States of America.

5. Defendant Jupiter Community Radio, Inc., Licensee of Station WJUP-LP, has its principal address at 601 Heritage Drive, STE 474, Jupiter, Florida, which is located in the Southern District of Florida.

## STATUTORY AND REGULATORY BACKGROUND

6. The FCC is an independent federal regulatory agency created by Congress to regulate intrastate, interstate, and foreign wire and radio communications pursuant to the Communications Act of 1934, as amended (the Act), 47 U.S.C. §§ 151 *et seq*.

7. Section 301 of the Act prohibits the operation of any apparatus for the transmission of energy, communications, or signals by radio from one place in the United States, except under and in accordance with the Act and with a license for that purpose granted under the provisions of the Act.

8. Pursuant to section 73.840 of the FCC Rules, 47 CFR § 73.840, a low-power FM station may not operate with greater than 105% of its maximum authorized transmitter power output.

9. Under section 73.845 of the FCC Rules, 47 CFR § 73.845, each low-power FM licensee shall maintain and operate its broadcast station in a manner that complies with the technical rules and the terms of its station authorization, including transmitter power output, effective radiated power, antenna type, and specified antenna coordinates.

10. Section 73.878(a) of the FCC Rules, 47 CFR § 73.878(a), requires licensees to make its broadcast station available for inspection by representatives of the Commission during the station's business hours and at any time it is in operation.

11.     Section 11.11(a) of the FCC Rules, 47 CFR § 11.11(a), provides requirements for the Emergency Alert System ("EAS"), including installation of minimum EAS equipment and use of a common EAS protocol.

12.     Pursuant to section 503(b) of the Act, 47 U.S.C. § 503(b), any person whom the FCC determines to have willfully or repeatedly failed to comply with the provisions of Chapter 5, Title 47 of the United States Code (47 U.S.C. §§ 151-646) or any rule, regulation or order issued by the FCC shall be liable to the United States for a forfeiture penalty.

13.     Section 312(f)(1) of the Act provides that "[t]he term 'willful,' when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this chapter or any rule or regulation of the Commission authorized by this chapter . . .." 47 U.S.C. § 312(f)(1).

14.     As relevant here, no forfeiture penalty shall be imposed against a person by the FCC unless and until:

> (A) the Commission issues a notice of apparent liability, in writing, with respect to such person;
> (B) such notice has been received by such person, or until the Commission has sent such notice to the last known address of such person, by registered or certified mail; and
> (C) such person is granted an opportunity to show, in writing . . . why no such forfeiture penalty should be imposed.

47 U.S.C. § 503(b)(4).

15.     Pursuant to section 503(b)(2)(E) of the Act, in determining the amount of a forfeiture penalty, the FCC "shall take into account the nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require." 47 U.S.C. § 503(b)(2)(E).

16.     Section 1.80 of the FCC Rules provides the amounts of forfeiture penalties which the FCC may impose for violations. 47 CFR § 1.80.  The FCC has also issued its *Forfeiture Policy*

*Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines*, 12 FCC Rec. 17087 (1997), *recons. denied*, 15 FCC Rec. 303 (1999) ("*Forfeiture Guidelines*"). Section 1.80(b) sets a base forfeiture of $10,000 for operation without an instrument of authorization; $7,000 for failure to permit inspection; and $8,000 for failure to install required EAS equipment. Section 1.80(b) and the *Forfeiture Guidelines* allow the FCC to adjust a forfeiture upward for violations that are egregious, intentional, or repeated, or that cause substantial harm or generate substantial economic gain for the violator.

17. The FCC's forfeiture penalties are "payable into the Treasury of the United States" and are "recoverable . . . in a civil suit in the name of the United States[.]" 47 U.S.C. § 504(a).

## THE VIOLATIONS AND NOTICE OF APPARENT LIABILITY

18. On July 27, 2015, the Commission granted Jupiter a license to operate the Station.

19. Jupiter is licensed to operate at a transmitter site located at 26° 56' 33" North latitude and 80° 04' 18" West longitude ("Authorized Site"). The Station is authorized to operate with a transmitter power output of 45 Watts, an effective radiated power of 20 Watts, and a one-bay antenna.[1]

20. Agents from the FCC's Enforcement Bureau's Miami Field Office obtained information indicating that Station WJUP-LP might be operating in an unauthorized manner.

21. On February 19, 2020, agents from the FCC's Enforcement Bureau's Miami Field Office monitored the Station's transmissions and, using direction-finding techniques, determined that the Station was transmitting from the roof of a residential building at 26° 56' 16.06" North

---

[1] A "single bay antenna" refers to an antenna system that consists of only one radiating element, essentially a single "bay" or section responsible for transmitting or receiving radio waves, as opposed to a multi-bay antenna which would have multiple radiating elements for increased gain and directional control.

4

latitude and 80° 04' 16.35" West longitude ("Transmitter Site"). The agents also observed that Jupiter was operating the Station with a two-bay antenna array.

22. The agents determined that the Transmitter Site was approximately 0.33 miles from the Authorized Site, and that the antenna being used was not the type of antenna specified in Jupiter's license. As a result, the Station was not providing service in the area authorized by the FCC.

23. The agents confirmed via the Commission's license databases that Jupiter had not sought approval to operate from the Transmitter Site or notified the Commission of its use of a different antenna type.

24. On February 26, 2020, an agent from the Miami Field Office called a representative of Jupiter during the Station's business hours to request an inspection of the Station's transmitter site. Jupiter's representative stated that an inspection would not be possible because Wayne Manning, the President of Jupiter, was out of the country with no scheduled return date. The agent inquired whether someone else associated with Jupiter was responsible for the Station's operation in Manning's absence, and the representative stated that Manning was the only person who could respond to the agent's questions about the Station.

25. On March 3, 2020, after two additional telephone calls, agents contacted Manning to schedule an inspection. Manning confirmed that he was the Station's chief operator but stated that he was unable to remotely modify the settings of the Station's transmitter.

26. On March 6, 2020, two agents conducted an inspection of the Station's facilities at the Transmitter Site. Manning accompanied the agents during the inspection.

27. The agents confirmed that the Station was using a two-bay antenna array rather than its authorized one-bay antenna and observed that the transmitter's power meter reflected a

transmitter power output of 100 Watts. Based on the observed two-bay antenna and transmitter power output of 100 Watts, the agents calculated that the Station was operating with an effective radiated power of approximately 177 Watts.

28. During the inspection, the agents observed that the Station did not appear to have any EAS equipment. Manning stated that the EAS equipment was installed at the Station's studio, which was located on the premises of the Omega Church International Ministry ("Omega Church"). An agent requested that Manning provide the logs of EAS tests received by the Station for the six months prior to the inspection.

29. On April 9, 2020, the Enforcement Bureau's Acting Field Director issued a Notice of Violation ("NOV") advising Jupiter that agents observed the Station: (a) operating at impermissible power levels; (b) operating at the Transmitter Site rather than the Authorized Site; (c) modifying its transmission system to use a different antenna without properly notifying the Commission; and (d) failing to make the Station available to Commission personnel. The NOV instructed Jupiter to respond to each violation and to support its responses with a declaration made under penalty of perjury, in accordance with section 1.16 of the FCC Rules, 47 CFR § 1.16. A copy of the NOV is attached as Exhibit A.

30. On April 24, 2020, an agent made a second request for the EAS logs and requested evidence that Jupiter had installed a properly functioning EAS decoder.

31. On May 2, 2020, Manning provided EAS logs associated with WOIB-LP, which is licensed to Omega Church, but did not provide logs of EAS tests for the Station.

32. On May 14, 2020, the agent again requested the EAS information pertaining to the Station, but did not receive the requested information.

33. In May 2020, Manning submitted multiple e-mails and letters advising that he had "turned down" the Station's transmitter; that Jupiter had replaced the antenna with a new antenna; and that Jupiter had "taken care of the violations." Manning did not send a declaration attesting to the accuracy of the responses, as required by the NOV.

34. On or about October 26, 2020, the FCC's Enforcement Bureau issued a Notice of Apparent Liability for Forfeiture ("NAL") stating that Jupiter had apparently failed to: (a) operate the Station in accordance with the terms of its authorization and the applicable LPFM technical rules applicable to low-power FM radio stations, (b) make the Station available for inspection, and (c) properly maintain EAS equipment. A copy of the NAL is attached as Exhibit B.

35. The NAL proposed a $25,000 forfeiture against Jupiter for its apparent willful violation of section 301 of the Act, 47 U.S.C. § 301, and sections 11.11, 73.840, 73.845, and 73.878 of the FCC Rules, 47 CFR §§ 11.11, 73.840, 73.845, 73.878. The $25,000 penalty comprised a base forfeiture amount of $10,000 for operating without an instrument of authorization; $7,000 for failing to permit an inspection; and $8,000 for failing to install required EAS equipment.

36. As required by 47 U.S.C. § 503(b)(2)(E), the Enforcement Bureau considered the "nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require" in assessing the proposed forfeiture.

37. The NAL ordered Defendant to pay the full amount of the proposed forfeiture, or to file a written statement seeking reduction or cancellation of the proposed forfeiture, within 30 days of the date of the NAL. The FCC sent a copy of the NAL to Defendant by certified mail, return receipt requested.

38. On November 30, 2020, Jupiter filed a response to the NAL. A copy of Jupiter's NAL Response is attached as Exhibit C.

39. Jupiter did not dispute the violations described in the NAL, but sought reduction or cancellation of the proposed forfeiture amount on the basis that: (1) the Commission assessed the wrong base forfeiture for its unauthorized operation; (2) Jupiter would make operational changes to better permit station inspection; (3) Jupiter provided EAS logs after the NAL was issued, which warranted cancellation of the proposed forfeiture for that violation; and (4) Jupiter had a record of prior compliance. Jupiter did not argue that it could not pay the proposed forfeiture in its NAL Response.

## THE FORFEITURE ORDER

40. On or about August 11, 2022, the FCC's Enforcement Bureau issued a Forfeiture Order imposing a penalty of $25,000 for failure to operate the Station in accordance with the terms of its FCC authorization and the applicable low-power FM technical rules, failing to make the Station available for inspection, and failing to maintain EAS equipment. A copy of the Forfeiture Order is attached as Exhibit D.

41. The Enforcement Bureau fully considered Jupiter's Response to the NAL and found no reason to cancel, withdraw, or reduce the proposed penalty. The Forfeiture Order affirmed the proposed penalty in the NAL and detailed the reasons for rejecting the arguments in Jupiter's NAL Response. The Enforcement Bureau found that it was appropriate to characterize Jupiter's violation of section 301 of the Act, 47 U.S.C. § 301, and sections 73.840 and 73.845 of the FCC Rules, 47 CFR §§ 73.840, 73.845, as "operation without an instrument of authorization for the service." 47 CFR § 1.80(b), Table 1 to Paragraph (b)(11). The Enforcement Bureau reasoned that Jupiter operated the Station with an unauthorized antenna from an unauthorized location,

operated with both a transmitter power output and an effective radiated power that exceeded the parameters set forth in the Station's license and in the FCC Rules, and operated the Station with an effective radiated power that was not (and could not have been) licensed under the low-power FM radio service.

42. The FCC rejected Jupiter's argument that its violations were not deliberate and found that its violations were willful. It further held that remedial steps taken by Jupiter did not support a reduced forfeiture for its failure to permit inspection and that Jupiter provided no basis to cancel the forfeiture for failure to install EAS equipment. Further, the Bureau found Jupiter's record of compliance did not warrant reduction of the proposed forfeiture, given that Manning admitted to using Jupiter's WJUP-LP Station equipment to operate an unlicensed radio station on 104.1 MHz in West Palm Beach, Florida in 2017, in violation of section 301 of the Act, and that Jupiter had failed to demonstrate that it had fully corrected all the violations in the NAL.

43. The Forfeiture Order directed Jupiter to pay the forfeiture penalty in thirty days. The FCC sent a copy of the Forfeiture Order to Jupiter and its representative by first class mail and certified mail to their addresses, return receipt requested. The FCC received confirmation of receipt of the certified mail by both Jupiter and its representative.

## MEMORANDUM ORDER AND OPINION ON RECONSIDERATION

44. On September 12, 2022, Jupiter filed a Petition for Reconsideration, conceding the violations but seeking reduction or cancellation of the $25,000 forfeiture based on its alleged inability to pay. A copy of the Petition for Reconsideration is attached as Exhibit E.

45. Jupiter asserted that after it filed its response to the NAL, Jupiter's financial situation changed when a new board took over management of the Station in October 2021. Jupiter submitted a declaration from its president, a list of the Station's non-cash assets, and copies of

eleven (11) months of bank statements from October 2021 to August 2022 in support of its inability to pay claim. Jupiter also argued that it was in the public interest to cancel or reduce the forfeiture so the Station could continue to serve the local community, stated that it had addressed past problems, and asserted that it had installed EAS equipment for the Station.

46.  On April 2, 2024, FCC agents attempted to conduct an inspection of the Station. Upon arriving at the Authorized Site, they found that the Station was off the air. An agent contacted Jupiter's president to arrange an inspection, but the president was uncooperative at the time and did not return the agent's follow-up calls seeking access to the Station's facilities to conduct an inspection.

47.  On June 18, 2024, the FCC's Enforcement Bureau issued a Memorandum Opinion and Order denying Jupiter's Petition for Reconsideration and affirming the findings in the Forfeiture Order. The Enforcement Bureau reviewed the Petition and the entire record and found no basis to reconsider the Forfeiture Order. A copy of the Memorandum Opinion and Order is attached as Exhibit F.

48.  The Enforcement Bureau determined that section 1.106 of the FCC Rules, 47 CFR § 1.106, procedurally barred it from granting a petition based on the new arguments and facts. Jupiter did not provide any information about its financial status at the time of the NAL, it did not timely raise argument about its inability to pay in its NAL Response, and it did not supplement its NAL Response before the Enforcement Bureau issued the Forfeiture Order.

49.  The Enforcement Bureau also determined that, on the merits, no reduction of the forfeiture was warranted. Jupiter's bank account statements reflected less than a year of financial documentation and the list of non-cash assets did not provide the Enforcement Bureau with sufficient evidence to assess Jupiter's claim of its inability to pay. Further, when FCC

agents attempted to inspect the Station and its EAS equipment, Jupiter's president was uncooperative, and the agents were ultimately unable to gain access to the Station's facilities to conduct an inspection—the very same behavior that formed one of the violations in the underlying NAL and Forfeiture Order.

50. The Memorandum Opinion and Order directed Jupiter to pay the forfeiture penalty in thirty days.  The FCC sent a copy of the Memorandum Opinion and Order to Jupiter and its representative by first class mail and certified mail, return receipt requested.  The certified mail to Jupiter was returned undelivered, but the first class mail was not returned.  The FCC received confirmation of receipt of the certified mail of a copy of the Memorandum Opinion and Order that was sent to Jupiter's attorney.

51. On October 2, 2024, the FCC sent a letter to Jupiter and its representative informing them that if the forfeiture is not paid within fourteen (14 days) of the date of the letter, the matter would be referred to the U.S. Department of Justice for enforcement.

52. Despite due demand, Jupiter has not paid the forfeiture.

## CLAIM FOR RELIEF

53. Plaintiff adopts and incorporates each allegation set forth in Paragraphs 1 through 52 above.

54. Defendant willfully violated section 301 of the Act, 47 U.S.C. § 301, and sections 73.840, 73.845, 73.878(a), and 11.11(a) of the FCC Rules, 47 CFR §§ 73.840, 73.845, 73.878(a), 11.11(a), by failing to operate the Station in accordance with the terms of its FCC authorization and the applicable low-power FM technical rules, failing to make the Station available for inspection, and failing to maintain EAS equipment.

55. By reason of the foregoing, Defendant is liable to the United States for the forfeiture amount of $25,000 pursuant to 47 U.S.C. § 503(b), section 1.80 of the FCC's Rules, 47 C.F.R. § 1.80, and the *Forfeiture Guidelines*. The Certificate of Forfeiture is attached hereto as Exhibit G.

56. Demand has been made upon Defendant by the Plaintiff for the sum due, but the amount due remains unpaid.

WHEREFORE, the Plaintiff prays for judgment against Defendant for the total of $25,000, plus costs. The Plaintiff further demands, pursuant to 28 U.S.C § 1961, that interest on the judgment be at the legal rate until paid in full.

Respectfully submitted,

HAYDEN O'BYRNE
UNITED STATES ATTORNEY

By: /s/ Brett Geiger
Brett R. Geiger
Assistant U.S. Attorney
Court No. A5502622
99 N.E. 4th Street, Suite 300
Miami, FL  33132-2111
Telephone No.  (305) 961-9190
Fax No. (305) 530-7139
E-mail: Brett.Geiger@usdoj.gov